# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

MIGUEL MARIN,

      Plaintiff,

vs.  No. CIV 02-1159 JB/DJS

THE CITY OF ALBUQUERQUE, and
TOM SHOLTIS, a police officer employed
with the City of Albuquerque,

      Defendants.

## MEMORANDUM OPINION

**THIS MATTER** comes before the Court on the Plaintiff Miguel Marin's Motion for Summary Judgment, filed July 3, 2003 (Doc. 14), and Defendant Tom Sholtis' Cross-Motion for Partial Summary Judgment, filed August 8, 2003 (Doc. 18). The primary issue is whether Sholtis detained and arrested Marin in violation of the Fourth Amendment to the United States Constitution. The Court finds that Sholtis had reasonable suspicion for the initial detention and that such reasonable suspicion was not immediately dispelled at the time Sholtis made contact with Marin. Because reasonable suspicion continued to exist, Sholtis did not violate the Fourth Amendment by continuing to detain and question Marin. Such questioning was proper and provided probable cause for Sholtis to arrest Marin. Accordingly, the Court has denied the Plaintiff's Motion for Summary Judgment, granted Defendant Sholtis' Cross-Motion for Partial Summary Judgment, and dismissed the Plaintiff's Fourth Amendment claim for wrongful detention and arrest with prejudice.[1]

---

[1] The Court has previously entered an Order denying the Plaintiff's Motion for Summary Judgment and granting Defendant Sholtis' Motion for Partial Summary Judgment. See Order, filed March 30, 2004 (Doc. 43). This opinion is intended to explain more fully the Court's reasoning for its previous Order.

## FACTUAL BACKGROUND

On November 21, 1999, at approximately 2:30 a.m., Sholtis observed Marin's vehicle stopped at a stop sign at Espanola and Central, S.E.[2] This area has a history of prostitution and drug distribution. See Deposition of Tom Sholtis at 53:19-20 (taken May 20, 2003). Based on the minimal amount of traffic, Sholtis believed that Marin's vehicle remained at the stop sign for an excessive amount of time. See Transcript of Criminal Proceedings at 8:12-15 (taken June 15, 2000); Sholtis Depo. at 53:6-8. As Sholtis approached the vehicle, he thought he observed someone enter through the passenger door and hide inside the vehicle. See Sholtis Depo. at 53:16-18; Plaintiff's Material Undisputed Facts, ¶ 3, at 2. Sholtis detained Marin by pulling his police car in front of Marin's vehicle and engaging his emergency equipment. See Sholtis Depo at 53:20-23; Plaintiff's Material Undisputed Facts, ¶ 2, at 2 .

---

[2] Marin takes his material undisputed facts from Sholtis' police report and attaches the report in its entirety to his motion. Although Marin disputes several of Sholtis' "Undisputed Material Facts," Marin does not provide evidence to contradict those facts. At oral argument, Marin's counsel twice stated that he agreed with the Court's factual analysis. See Transcript of Motion Hearing at 4:21-23 (February 5, 2004); id. at 10:12-18. Marin's counsel also informed the Court that he believed summary judgment was appropriate and that the Court could make the determination whether Sholtis' continued detention of Marin was reasonable. See id. at 4:23-25.

> MR. KENNEDY: "I don't disagree with the Court's factual analysis of the situation[] and I believe it is appropriate for summary judgment and it is . . . [for] the Court to make the determination . . . as far as reasonableness of the continued detention of my client."
>
> * * * *
>
> MR. KENNEDY: "[W]e agree completely with the Court's analysis as far as the factual situation and exactly what happened in this case[.]"

See id. at 4:22-25; id. at 10:12-14.

The Court's citations to the transcript refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

One of the reasons for the initial stop was Sholtis' belief that he saw a "shadowy figure" enter Marin's car. Plaintiff's Undisputed Facts, ¶ 3, at 2. Because of the area's history, Sholtis believed criminal activity might be occurring. See id. During the initial detention, Sholtis approached and immediately searched the bed of Marin's truck and the passenger area of the truck with a flashlight. See Sholtis Depo. at 54:4-9; Plaintiff's Undisputed Facts, ¶ 4, at 2. He did not discover anyone in Marin's truck other than Marin. See Plaintiff's Undisputed Facts, ¶ 5, at 2. Sholtis decided that he must have mistaken flags flapping in the wind near the vehicle for a shadowy figure. See Sholtis Depo. at 54:10-17; Plaintiff's Undisputed Facts, ¶ 6, at 2.

Sholtis asserts that he also had a second reason for the initial traffic stop. He stated that, under the community caretaker doctrine, he had a concern about Marin's ability to operate a vehicle. At his deposition, Sholtis gave the following testimony: "Another thing I have had previously is I found people passed out at the wheel in the Southeast Area Command. So on the community caretaker side of things I was checking to make sure that the person was all right, also." Sholtis Depo. at 56:1-5.[3]

After satisfying himself that there was no one else in Marin's vehicle, Sholtis continued to detain Marin and ask him questions about where he was coming from and where he was heading. See Sholtis Depo. at 54:18-22; Plaintiff's Undisputed Facts ¶ 8, at 2. Based on a number of factors, Sholtis believed that Marin might be intoxicated. First, Marin had bloodshot watery eyes and told

---

[3] Marin argues that the police report indicates that Sholtis' sole reason for the stop was to investigate possible prostitution or drug dealing. Transcript of Motion Hearing at 29:21-23. He contends that Sholtis' deposition testimony regarding the community caretaker doctrine is "an after created justification." Id. at 29:1-2. It is undisputed, however, that Sholtis testified at his deposition that one of his purposes in detaining Marin was to determine his fitness to drive. Marin has not pointed to any evidence in the record to contradict that fact.

Sholtis that he had just left a party. See Transcript of Criminal Proceedings at 12:17-18; Deposition of Miguel Marin at 25:3-6 (taken May 20, 2003). Second, after Marin told Sholtis that he had dropped off his cousin on Rhode Island, and was going to his home on Texas, Sholtis did not believe that the construction barricades set up at Chico and Copper would require Marin to travel so far west of his planned destination. See Sholtis Depo. at 54:18 to 55:2. Knowing the area and the streets that were blocked that night, Sholtis advised Marin that his story was inaccurate and corrected him. See id. at 62:10-15. Finally, Sholtis noticed that Marin answered his questions in a sensitive and argumentative manner. See Transcript of Criminal Proceedings at 12:20-24. Sholtis suspected that the nature of Marin's responses might indicate that Marin was intoxicated and asked Marin to engage in an eye nystagmus test. When Marin refused, Sholtis ordered Marin from the truck. When Marin refused to exit his truck, Sholtis arrested Marin. See Plaintiff's Undisputed Facts ¶¶ 9-12, at 2.

## PROCEDURAL BACKGROUND

Marin has filed a complaint in which he alleges that Sholtis' initial stop of Marin lacked reasonable suspicion and that his continued detention, after Sholtis dispelled any reasonable suspicion, lacked probable cause. See Complaint to Recover Damages Due to Deprivation of Civil Rights and Violations of the New Mexico Tort Claims Act ¶¶ 17-18, at 3 ("Complaint"), attached to Notice of Removal, filed September 13, 2002 (Doc. 1). In his motion, Marin does not challenge the legality of the initial traffic stop. Marin limits his motion for summary judgment to his claim that, after Sholtis learned the initial traffic stop's purpose had no basis, Sholtis violated the Fourth Amendment by continuing to detain him and question him without probable cause. See Plaintiff's Motion at 1.

Sholtis filed a Cross-Motion for Partial Summary Judgment pursuant to rule 56 of the Federal Rules of Civil Procedure and pursuant to local rule 7. Sholtis contends that he is entitled to qualified

immunity from Marin's claim that he detained and arrested Marin without probable cause in violation of the Fourth Amendment. Sholtis argues that, because reasonable suspicion existed for the continued detention and probable cause existed for the arrest, no Fourth Amendment violation occurred. He further argues that, even if a violation occurred, the clearly established law did not put Sholtis on notice that his conduct would be unlawful.

## QUALIFIED IMMUNITY AND SUMMARY JUDGMENT STANDARDS

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Once a defendant raises the qualified immunity defense, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred." Pueblo Neighborhood Health Centers, Inc. v. Losavio, 847 F.2d 642, 646 (10th Cir. 1988). If the plaintiff meets this two-part burden, the defendant "assumes the normal summary judgment burden of establishing that no material facts that would defeat his claim for qualified immunity remain in dispute." Woodward v. City of Worland, 977 F.2d 1392, 1396-97 (10th Cir. 1992).

In ruling on a summary judgment motion, the court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party. See Allen v. Muskogee, Oklahoma, 119 F.3d 837, 839-40 (10th Cir. 1997). The Court's role on a motion for summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 249 (1986). Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. See <u>Ulissey v. Shvartsman</u>, 61 F.3d 805, 808 (10th Cir. 1995).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 247-48 (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248 (citing 10A C. Wright, A. Miller, & M. Kane, <u>Federal Practice and Procedure</u> § 2725, at 93-95 (1983)). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. See <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. at 249-50.

## **LEGAL ANALYSIS**

Marin contends that, even if Sholtis had reasonable suspicion to initially detain Marin, Sholtis dispelled that suspicion quickly and should have allowed Marin to proceed with his business without asking him questions regarding his travel plans. Marin argues that Sholtis had no probable cause to believe that Marin had committed a crime. If Sholtis' only purpose for the initial stop had been to investigate the "shadowy figure" he thought he had seen enter Marin's vehicle, his suspicion would have been dispelled as soon as he searched the vehicle with his flashlight. Reasonable suspicion still existed, however, because Sholtis also believed that Marin might have been unfit to drive due to illness or intoxication. Accordingly, Sholtis' questioning of Marin was proper and provided probable cause for his arrest.

**I.    SHOLTIS' INITIAL DETENTION OF MARIN WAS "JUSTIFIED AT ITS INCEPTION."**

In <u>United States v. Hunnicutt</u>, 135 F.3d 1345, 1348 (10th Cir. 1998), the United States Court of Appeals for the Tenth Circuit stated that a routine traffic stop qualifies as a "seizure" within the meaning of the Fourth Amendment. The Tenth Circuit further reasoned, however, that a traffic stop is more analogous to an investigative detention than a custodial arrest. <u>See</u> <u>id.</u> To determine the reasonableness of an investigative detention, the Court "make[s] a dual inquiry, asking first 'whether the officer's action was justified at its inception,' and second 'whether it was reasonably related in scope to the circumstances which justified the interference in the first place.'" <u>Id.</u> (quoting <u>Terry v. Ohio</u>, 392 U.S. 1, 20 (1968)).

In <u>United States v. Ozbirn</u>, 189 F.3d 1194, 1197 (10th Cir. 1999), the Tenth Circuit stated that "a traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either . . . probable cause . . . or a reasonable articulable suspicion" of a crime. In <u>Terry v. Ohio</u>, 392 U.S. at 22-23, the Supreme Court acknowledged that ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances.

Here, Sholtis had the reasonable suspicion required for the traffic stop because of the totality of circumstances surrounding the initial detention. First, the area had a history of prostitution, drug dealing, and other criminal activity. Second, Sholtis observed Marin's vehicle stopped at a stop sign for an excessive amount of time based on the amount of traffic early that morning. Finally, Sholtis believed that he saw a person enter through the passenger door and hide in the vehicle. Based on the totality of the circumstances, the individual acts of ambiguous behavior gave rise to a reasonable

suspicion of criminal activity. Accordingly, Sholtis' investigative detention of Marin meets the "justified at its inception" standard.

In addition, many federal and state courts have held that law enforcement officials may approach and detain citizens for community caretaking purposes in a variety of circumstances without running afoul of the Fourth Amendment and equivalent state constitutional provisions. See e.g., United States v. King, 990 F.2d 1552, 1560-1561 (10th Cir. 1993)(stating that police officers may seize a person to ensure the safety of the public and/or the individual, regardless of suspected criminal activity); Winters v. Adams, 254 F.3d 758, 763-64 (8th Cir. 2001)(recognizing validity of community caretaking type of Terry v. Ohio stop; noting that officers would have been derelict in duties to have walked away, permitting possibly intoxicated individual to drive a car); State v. Maynard, 323 A.2d 580, 581 (N.H. 1974)(holding that an officer's stop of a motor vehicle is constitutional if he "in good faith reasonably believe[s] that the driver of a particular vehicle may be ill and physically unfit to drive."). Police officers are expected to exercise " community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Cady v. Dombrowski, 413 U.S. 433, 441 (1973).

Here, Sholtis had previously patrolled the area and found people incapacitated in their vehicles. Because Marin stopped his vehicle at a stop sign for an unusual amount of time given the amount of traffic at that time of the morning, Sholtis wanted to confirm that Marin was physically fit to drive. Thus, the community caretaker doctrine provided an additional justification for the intial stop.

## II. THE CONTINUED DETENTION WAS PROPER BECAUSE IT WAS "REASONABLY RELATED IN SCOPE" TO SHOLTIS' COMMUNITY CARETAKER FUNCTION.

Marin alleges that Sholtis had no probable cause to believe Marin had committed a crime, and that the continued detention of Marin was thus unreasonable. Accordingly, the Court must decide "'whether [the continued detention] was reasonably related in scope to the circumstances which justified the interference in the first place.'" United States v. Hunnicutt, 135 F.3d at 1348 (citations omitted). While an officer may make a traffic stop based upon reasonable suspicion, once the suspicion is dissipated, probable cause must support continued detention. See Gross v. Pirtle, 245 F.3d 1151, 1157 (10th Cir. 2001). In Gross v. Pirtle, police officers legally detained the plaintiff at a sobriety checkpoint, but continued to detain him after they determined that the plaintiff was not impaired. The Tenth Circuit held that probable cause must support the continued detention of the plaintiff. See id. ("In order for the arrest to be lawful, Deputy Pirtle must have had probable cause to detain Mr. Gross for unlawful use of the dealer plate."); United States v. McSwain, 29 F.3d 558, 561-62 (10th Cir. 1994)(reasoning that officer exceeded the scope of the traffic stop's underlying justification when he questioned defendant about his vehicle and travel itinerary and requested to see his license and registration after ensuring the validity of the vehicle's temporary registration sticker).

Unlike Gross v. Pirtle and United States v. McSwain, Sholtis had not completely dispelled the reasonable suspicion that led to the initial detention. Here, confirmation that Marin had no other passengers in the vehicle dispelled Sholtis' reasonable suspicion of possible prostitution or drug dealing. Sholtis' second concern regarding Marin's fitness to drive, however, remained. Assessing Marin's ability to operate his vehicle involved more than verifying that Marin was awake. It also included finding out whether Marin was ill or intoxicated. Thus, Sholtis' awareness that Marin had

not fallen asleep or passed out behind the wheel did not completely dispel the reasonableness of the traffic stop under the community caretaker doctrine. To ensure public safety and Marin's safety, Sholtis also needed to ascertain whether Marin's possible intoxication had influenced his unusual driving.

Before making the initial stop, Sholtis observed Marin's vehicle stopped at a stop sign for an excessive and unusual amount of time given the amount of traffic during that early part of the morning. During the initial traffic stop, Sholtis also noticed Marin's bloodshot watery eyes. Sholtis then questioned Marin about his travel pursuant to his community caretaker function. The questioning was "reasonably related in scope" to Sholtis' concern about Marin's possible intoxication, one of the reasons for the initial detention.

Because Sholtis' traffic stop was "justified at its inception" and "reasonably related in scope" to the circumstances that justified the initial detention, Marin cannot demonstrate that Sholtis violated his Fourth Amendment rights by asking questions to ascertain whether Marin was intoxicated. Thus, Marin has not met his initial burden of demonstrating that a constitutional violation occurred. Accordingly, Sholtis is entitled to qualified immunity from Marin's claim for wrongful detention. Because Marin has not satisfied the first prong of the qualified immunity analysis, the Court need not reach the question whether the right allegedly violated was clearly established.

### III.    MARIN'S ANSWERS TO SHOLTIS' QUESTIONS PROVIDED PROBABLE CAUSE FOR MARIN'S ARREST BECAUSE A REASONABLE OFFICER COULD HAVE BELIEVED THAT MARIN WAS DRIVING WHILE INTOXICATED AND <u>OBSTRUCTING A POLICE OFFICER</u>.

"When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to

arrest' the plaintiff." Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995)(quoting Hunter v. Bryant, 502 U.S. 224, 228(1991)). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Jones v. City and County of Denver, 854 F.2d 1206, 1210 (10th Cir. 1988)(citations omitted). "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause . . . and in those situations courts will not hold that they have violated the Constitution." Saucier v. Katz, 533 U.S. 194, 206 (2001).

    Here, Sholtis observed Marin's vehicle stopped at a stop sign for an unusual amount of time in the early morning hours. In the course of the initial detention, Sholtis noticed Marin's bloodshot watery eyes. When Sholtis questioned Marin pursuant to his community caretaker function, he learned that Marin had just left a party. In addition, Marin's story about his travel route supported Sholtis' suspicion that Marin might be intoxicated. Marin's argumentative responses to Sholtis' questions, his refusal to take a field sobriety test, and his refusal to exit his vehicle also contributed to Sholtis' probable cause to arrest Marin. These facts entitle Sholtis to qualified immunity from Marin's wrongful arrest claim because a "reasonable officer" could have believed that the facts and circumstances surrounding Sholtis' encounter with Marin established probable cause that Marin had "committed or [was] committing an offense." Accordingly, Marin cannot meet his initial burden of demonstrating that a constitutional violation occurred. Given the facts that led to Marin's arrest, Marin has failed to demonstrate that Sholtis violated his constitutional rights. Thus, Sholtis is also entitled to qualified immunity from Marin's claim for false arrest. Because the Court finds that no constitutional violation occurred, it need not reach the question whether the right allegedly violated

was clearly established.[4]

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Joseph P. Kennedy
Kennedy & Oliver, P.C.
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Kenneth C. Downes
Rick Sandoval
Kenneth C. Downes & Associates, P.C.
Albuquerque, New Mexico

 *Attorneys for the Defendant Tom Sholtis*

---

[4] Sholtis requests attorney's fees and costs, but provides no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception. Sholtis points to no exception, and none appears available.