## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

MIGUEL MARIN,

    Plaintiff,

vs.                                                    No. CIV 02-1159 JB/DJS

THE CITY OF ALBUQUERQUE and
TOM SHOLTIS, a police officer employed
with the City of Albuquerque,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant Tom Sholtis' Motion for Summary Judgment, filed October 18, 2004 (Doc. 59).[1] The Court held a hearing on this motion on December 2, 2004, at which the Court took the matter under advisement.[2] After reviewing the record and the pertinent caselaw, the Court will grant the Defendant Sholtis' Motion for Summary Judgment on the remaining federal claim. The Court will remand the state tort claim for malicious abuse of process to the Second Judicial District, Bernalillo County, State of New Mexico.

## FACTUAL BACKGROUND[3]

---

[1] The City of Albuquerque was an original party to this lawsuit, but the Court dismissed the City pursuant to a stipulated order, filed February 5, 2004 (Doc. 39).

[2] Plaintiff Miguel Marin neither filed a response to the motion nor attended the hearing, by telephone or in person.

[3] Neither party submitted exhibits to this motion for summary judgment before the Court held a hearing on this motion. Marin did not file a response to this motion, and Sholtis originally relied solely on the exhibits already in the record from the earlier motions for summary judgment. The Court, therefore, rests its factual findings in part on the exhibits submitted with the earlier summary judgment motions, which the Court has already resolved. See Plaintiff Miguel Marin's Motion for Summary Judgment, filed July 3, 2003 (Doc. 14); Defendant Tom Sholtis' Cross-Motion for Partial

Plaintiff Miguel Marin did not file a response or otherwise oppose this motion.[4]  Hence, the facts, as set forth in Defendant Tom Sholtis' many papers, are not contested.

On November 21, 1999, at approximately 2:30 a.m., Defendant Albuquerque Police Department officer Tom Sholtis observed Plaintiff Miguel Marin's vehicle stopped at a stop sign at Espanola and Central, S.E. in Albuquerque, New Mexico.  See State of New Mexico Uniform Incident Report, prepared by Officer T. Sholtis at 2 (dated Nov. 11, 1999).[5]  This area has a history of prostitution and drug distribution.  See Deposition of Tom Sholtis at 53:19-20 (taken May 20, 2003).  Based on the minimal amount of traffic, Sholtis believed that Marin's vehicle remained at the

---

Summary Judgment, filed August 8, 2003 (Doc. 18).  The Court will also consider the supplemental record that Sholtis submitted after the Court held the hearing on this motion on December 3, 2004.  See Supplemental Record in Support of Defendant's Motion for Summary Judgment, filed December 3, 2004 (Doc. 68).

[4] On July 19, 2004, Marin's counsel, Joseph P. Kennedy, filed a Motion to Withdrawal as Counsel.  In his motion, Kennedy indicates that Marin agreed that Kennedy should withdraw, but that Marin requested additional time to seek alternative representation.  At the pretrial conference on July 19, 2004, the Court vacated the trial date to provide Marin additional time to find other counsel.  See Clerk's Minutes, filed July 20, 2004 (Doc. 51).  At the August 2, 2004, status conference, Marin did not appear, either telephonically or in person.  See Clerk's Minutes, filed August 2, 2004 (Doc. 55).  Accordingly, the Court reset the status conference for August 11, 2004.  At the August 11, 2004, status conference, Marin appeared *pro se* and requested additional time to seek alternative counsel.  In response to this request, the Court allowed Marin an additional 60 days to seek counsel.  See Clerk's Minutes, filed August 11, 2004 (Doc. 57).  At the October 18, 2004, status conference, Marin again requested that the Court allow him more time to seek counsel.  The Court agreed to allow Marin until the end of October, 2004, to retain counsel.  See Clerk's Minutes, filed October 19, 2004 (Doc. 61).  The Court noted, however, that, if Marin did not arrange representation by then, he would have to proceed *pro se*.  See id.  At the time the Court held the hearing on Sholtis' Motion for Summary Judgment on December 2, 2004, Marin had not contacted the Court to inform it that he had secured alternative counsel.

[5] Marin, through his counsel, attached the police report to his Motion for Summary Judgment, which the Court denied.  See Court's Order on the Plaintiff Miguel Marin's Motion for Summary Judgment and Defendant Tom Sholtis' Cross-Motion for Partial Summary Judgment at 1, filed March 3, 2004 (Doc. 43).

stop sign for an excessive amount of time. See Transcript of Criminal Proceedings at 8:12-15 (taken June 15, 2000); Sholtis Depo. at 53:6-8. As Sholtis approached the vehicle, he thought he observed someone enter through the passenger door and hide inside the vehicle. See Sholtis Depo. at 53:16-18. Sholtis detained Marin by pulling his police car in front of Marin's vehicle and engaging his emergency equipment. See id. at 53:20-23.

One of the reasons for the initial stop was Sholtis' belief that he though he saw someone enter Marin's car. See id. at 53:16-18. Because of the area's history, Sholtis believed criminal activity might be occurring. See id. at 53:6-20. During the initial detention, Sholtis approached and immediately searched the bed of Marin's truck and the passenger area of the truck with a flashlight. See id. at 54:4-9. He did not discover anyone in Marin's truck other than Marin. See id. at 57:3-5. Sholtis decided that he must have mistaken flags flapping in the wind near the vehicle for a shadowy figure. See id. at 54:10-17.

After satisfying himself that there was no one else in Marin's vehicle, Sholtis continued to detain Marin and ask him questions about where he was coming from and where he was heading. See Sholtis Depo. at 54:18-22. Based on a number of factors, Sholtis believed that Marin might be intoxicated. First, Marin had bloodshot watery eyes, see Transcript of Criminal Proceedings at 12:17-18, and Marin told Sholtis that he had just left a party, see Deposition of Miguel Marin at 25:3-6 (taken May 20, 2003). Second, after Marin told Sholtis that he had dropped off his cousin on Rhode Island St., and was going to his home on Texas St., Sholtis did not believe that the construction barricades set up at Chico Ave. and Copper Ave. would require Marin to travel so far west of his planned destination. See Sholtis Depo. at 54:18 - 55:2. Knowing the area and the streets that were blocked that night, Sholtis advised Marin that his story was inaccurate and corrected him. See id.

at 62:10-15. Finally, Sholtis noticed that Marin answered his questions in a sensitive and argumentative manner. See Transcript of Criminal Proceedings at 12:20-24. Sholtis suspected that the nature of Marin's responses might indicate that Marin was intoxicated. See id. at 12:20-24. Sholtis asked Marin to engage in an eye nystagmus test. See id. at 13:3-4. Marin, however, refused to take the test, and Sholtis ordered Marin from the truck. See id. at 13:6-7; Uniform Incident Report at 3.[6] Marin refused to exit the vehicle. See Transcript of Criminal Proceedings at 13:6-7; Uniform Incident Report at 3.

Sholtis testified that Marin then "lunged" towards the vehicle's interior, Shotlis Depo. at 63:11-12; Transcript of Criminal Proceedings at 13:6-13, which led Sholtis to believe Marin was reaching for a weapon, see Transcript of Criminal Proceedings at 13:14-19; Uniform Incident Report.[7] In his undisputed facts to this motion, Sholtis indicates that Marin denies making this movement. See Defendant's Motion for Summary Judgment ¶ 18, at 5. In his deposition, Marin states that Sholtis "asked me for my driver's license, registration and insurance, which I did[.] I

---

[6] At some point -- although the exact chronology based on the record before the Court is unclear -- Sholtis asked Marin to turn off his vehicle's engine, and Marin complied. See Transcript of Criminal Proceedings at 12:15. According to the police report, this encounter occurred after Marin refused to cooperate with taking the eye nystagmus test. See Uniform Incident Report at 3.

[7] At the hearing on Sholtis' motion for summary judgment and in his briefing to that motion, Sholtis represented to the Court that this fact, as well as the description of the physical altercation between Sholtis and Marin, was contained in the transcript of the Criminal Proceedings at page 13. See Transcript of Defendant's Motion for Summary Judgement at 4:20 - 5:25 (taken December 2, 2004). Sholtis indicated that the omission of this information was inadvertent. See id. The Court provided Sholtis an opportunity to supplement the record with this information. See id. at 9:5-9. On December 3, 2004, Sholtis filed a supplement to the record containing page 13 of the Criminal Proceedings Transcript, as well as other previously omitted parts of the exhibits. See Supplemental Record in Support of Defendant's Motion for Summary Judgment.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

pulled it from my console and gave them to him." Marin Depo. at 25:21-23. The Court, however, cannot locate any place in the record in which Marin expressly denies making the sudden movement towards the console.[8]

The remaining events are based on the police report and, in part, the transcript of the criminal proceedings. According to the report, Sholtis reached into the car and grabbed Marin:

> for officer safety and pulled [Marin] away from the storage area. Marin continued to refuse and resist [Sholtis'] efforts to control [Marin], even after [Sholtis] advised [Marin] he was under arrest. A struggle ensued as [Sholtis] attempted to extricate Marin out of the vehicle with little success. During the struggle [Sholtis] pull off Marin[']s jacket and pullover shirt. [Sholtis] was unable to pull him completely out of the vehicle[. Marin] . . . climbed back in the truck and while only controlling (or attempting to control) one arm [Marin] then opened the door and [Sholtis] placed him in handcuffs. [Marin] did have a bloody lip from the struggle.

Uniform Incident Report at 3. The testimony provided at the criminal proceedings confirms, in part, this description of events. Sholtis testified that, after seeing Marin lunging toward the console:

> [Sholtis] made a split-second decision that possibly there was a weapon in that location and [Sholtis] went through the window to grab Mr. Marin to keep him from getting at that center console. A struggle erupted inside the cab of the pickup truck, which was probably rather comical if you were on the outside watching it, with [Sholtis'] legs hanging outside the pickup truck, the upper body inside trying to pull [Marin] away from the console.

Transcript of Criminal Proceedings at 13:16-23. Sholtis continued to testify about the altercation that ensued: "Initially [Sholtis] reached in to grab [Marin] by the jaw, the back of his head to grab and twist him out . . . ," Transcript of Criminal Proceedings at 13:24-25, but Sholtis does not provide the Court with any more of the testimony from the criminal proceedings.

In his Motion for Summary Judgment, Sholtis alleges that it is undisputed that Marin suffered

---

[8] The Court notes that the sudden movement and the reasonableness of force was not at issue in the earlier motions for summary judgment regarding the continued detention of Marin and probable cause for his arrest.

minor physical injuries, such as scrapes and, at worst, a cut lip, as the result of Sholtis' use of force. See Defendant's Motion for Summary Judgment ¶ 19, at 5. Sholtis does not, however, cite to any evidence in the record to support this proposition and, aside from the police report, there is nothing in the record to document the physical injuries suffered by Marin.[9] Marin, however, offers no evidence, in this motion or otherwise, to contradict the police report description of the physical altercation that occurred or of the resulting injuries that he suffered.

## PROCEDURAL BACKGROUND

On March 30, 2004, the Court found that Sholtis had reasonable suspicion for Marin's initial detention and that such reasonable suspicion was not immediately dispelled at the time Sholtis made contact with Marin. See Memorandum Opinion at 1, filed August 10, 2004 (Doc. 56).[10] Because the Court found that reasonable suspicion continued to exist, the Court held that Sholtis did not violate the Fourth Amendment by continuing to detain and question Marin. See id. Such questioning was proper and provided probable cause for Sholtis to arrest Marin. See id. In light of the facts leading to Marin's arrest, the Court held that Marin did not demonstrate that Sholtis violated his constitutional rights by continuing to detain and question Marin. See id. at 11.

Defendant Tom Sholtis, pursuant to rule 56 of the Federal Rules of Civil Procedure and

---

[9] At the hearing on this motion, the Court inquired if Sholtis had any additional documentation of Marin's injuries other than the police report. See Transcript of Motion for Summary Judgment Hearing at 6:11 - 7:8. Sholtis conceded that they did not place anything else in the record to support the proposition that Marin suffered only minor injuries. See id.

[10] Marin originally filed his case in state court on August 2, 2002. See Complaint to Recover Damages Due to Deprivation of Civil Rights and Violations of the New Mexico Tort Claims Act, No. CV-2002 05525 (Second Judicial District, Bernalillo County, State of New Mexico)(attached to Notice of Removal, filed September 13, 2002 (Doc. 1)). The Defendants removed the case to federal court pursuant to 28 U.S.C. § 1441 on September 13, 2002. See Notice of Removal at 1.

D.N.M.LR-Civ. 7, requests that the Court grant his motion for summary judgment. Sholtis contends that he is entitled to judgment as a matter of law on Marin's remaining claims.

## STANDARD FOR DECIDING MOTION FOR SUMMARY JUDGMENT

The federal courts properly regard summary judgment, not as a procedural short cut, but rather as an integral part of the Federal Rules as a whole, which "are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)(quoting Fed. R. Civ. P. 1). Under rule 56(c), the movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323 (quoting Fed. R. Civ. P. 56(c)). The movant may negate elements of the non-movant's factually unsupported claims or defenses "with or without supporting affidavits." Id. To properly respond, "the nonmoving party [must] go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (citing Fed. R. Civ. P. 56(e)).

The standard for summary judgment is essentially the same as the standard for a judgment as a matter of law under rule 50(a), which provides that the "trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)(citations omitted). In ruling on a motion for summary judgment, the district court should not weigh the evidence and determine the truth of the matter. See id. at 249. Instead, the court should ask whether a reasonable jury could return a verdict for the non-moving party based on the evidence before the jury. See id. If the evidence by the non-moving party

is merely colorful or not significantly probative, the entry of summary judgment is proper. See id. at 249-50. Accordingly, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient . . . ." Id. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)(quoting First Nat. Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

### LAW ON QUALIFIED IMMUNITY

When a government official asserts the defense of qualified immunity, the burden shifts to the plaintiff. See Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001). Accordingly, "[t]he plaintiff must first establish that the defendant's actions violate a constitutional or statutory right." Id. (quotation omitted). Assuming that the plaintiff establishes the violation, the court must then consider whether the right was clearly established at the time of the violation. See Saucer v. Katz, 533 U.S. 194, 201 (2001). It is crucial, the Supreme Court has noted, that the second inquiry "be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. Thus, "[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. In making this determination, the court will view the evidence in the light most favorable to the non-moving party; however, the record must demonstrate that the individual defendant must satisfy this "heavy two-part burden." Medina v. Cram, 252 F.3d at 1128 (quoting Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir.1995)).

### ANALYSIS

The Court is mindful that Marin is now proceeding *pro se*. After reviewing, however, the record and the law pertaining to the standards for granting a motion for summary judgment, the Court

will grant Sholtis' Motion for Summary Judgment on the fourth amendment excessive force claim. The Court will remand Marin's state law claim for malicious abuse of process so that the state court can determine the state law issues that claim raises.

**I.  SHOLTIS' REASONABLE EFFORTS TO PLACE MARIN IN CUSTODY WHICH RESULTED IN MINOR SUPERFICIAL INJURIES DID NOT VIOLATE THE FOURTH AMENDMENT.**

Marin must overcome Sholtis' qualified immunity defense by satisfying a heavy two-part burden of, first, establishing Sholtis' violated Marin's constitutional rights and, second, showing the right was clearly established.

Sholtis' use of force to physically remove Marin from the vehicle was reasonable in the context of the lawful arrest and of Marin's admitted refusal to obey Sholtis' lawful command to exit the vehicle. Marin does not dispute the fact that he refused to exit his truck. See Plaintiff's Motion for Summary Judgment ¶ 12, at 2. Although there is some indication in the record that Marin denies making the sudden movement toward the console, this is not sufficient to satisfy Marin's burden of establishing a genuine issue of material fact whether Sholtis' used reasonable efforts to place Marin in custody. He has not, in response to this motion, filed any admissible evidence to create a genuine issue of material fact about the sudden movement. The police report and, in part, the transcript of the criminal proceedings, document the physical struggle between Sholtis and Marin. Based on this evidence, the Court concludes that the force used by Sholtis which resulted in minor superficial injuries to Marin did not violate the Fourth Amendment. Marin has offered no evidence contradicting the amount of force used by Sholtis, or the seriousness of the injuries resulting from the struggle. The Court finds, therefore, that Marin does not offer evidence establishing a genuine issue of material fact

whether Sholtis used unreasonable force.[11]

Even if it were clearly established by the record that Marin denies making the sudden movement toward the console, the Court would reach the same conclusion. This case is similar to Pride v. Does, 997 F.2d 712 (10th Cir. 1993), in which the United States Court of Appeals for the Tenth Circuit considered whether a state trooper used excessive force when questioning the plaintiff while in custody. See id. at 714. In Pride v. Does, the plaintiff, Pride, was arrested for disorderly conduct arising from an altercation at a state fair. See id. The state troopers transported Pride to the trooper's officer and seated him in a chair with his hands handcuffed behind his back. See id. Lamb, a state trooper, attempted to question Pride about what occurred at the fair. See id. Lamb and Pride, however, differed on their versions of what occurred after Lamb began to question Pride. According to Lamb, "Pride became loud and obnoxious" and "started forward out of his seat." Id. Lamb also alleged that Pride "was intoxicated and had a threatening and intense expression on his face." Id. In response, Lamb contended that she placed her hand on Pride's neck, applying modest pressure for seven to eight seconds. See id. Pride, however, denied that he started out of his chair toward Lamb

---

[11] The Court notes that local rule D.N.M.LR-Civ 56.1(b), "Summary Judgment Procedures" states: "All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted." In granting summary judgment on this basis, the court should consider "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant. . . . [The Tenth Circuit has] noted that 'only when these aggravating factors outweighed the judicial system's strong predisposition to resolve cases on their merits is outright dismissal with prejudice an appropriate sanction.'" Miller v. Department of Treasury, 934 F.2d 1161, 1162 (10th Cir. 1991)(quoting Hancock v. City of Oklahoma, 857 F.2d 1394, 1396 (10th Cir.1988)(discussing the Oklahoma local rule, "which states a party confesses all matters raised by a pleading to which he does not respond within fifteen days"). The Court, therefore, recognizes the local rule that, by failing to file a response, Marin admitted the facts which Sholtis proferred regarding the use of force. The Court, however, also rests its conclusion on the fact that Marin introduced the police report into evidence and has failed to offer any evidence to contract the facts as set forth in that report.

or otherwise acted in a physically threatening manner. See id. According to Pride, he "verbally resisted Lamb's questioning, at one point saying to Lamb, . . . 'I bet you hate men, don't you?' [Pride] alleged that Lamb responded by stating, 'I'll show you how I hate men,' and choking Pride" with her hand for approximately 30 seconds. Id. The Tenth Circuit, after noting that "[t]he only allegation Pride flatly contests is that he was starting out of his chair," held that Lamb's conduct was objective reasonable:

> [T]he relevant question for the court is not whether Pride acted in a threatening manner but whether Officer Lamb reasonably believed so. See Hunter v. Bryant, 502 U.S. 224, ----, 112 S.Ct. 534, 537 . . . . Pride's pleadings, while directly contesting certain factual issues, simply fail to demonstrate that Lamb acted unreasonably in response to the perceived threat to her safety and the safety of others in the room. Officer Lamb encountered an intoxicated and provocative individual who was in custody for disorderly conduct. When that individual acted in a manner which she reasonably perceived as threatening, she used moderate force to restrain him. The record reveals that [the] individual sustained minimal immediate injury and no permanent injury whatsoever as a result of that application of force. Under these circumstances, we hold that Officer Lamb's conduct was objectively reasonable. Because Pride failed to show that Lamb violated his Fourth Amendment rights, his § 1983 claim was properly dismissed on summary judgment.

Id. at 717.

Like in Pride v. Does, Sholtis was interacting with a man he believed to be intoxicated who had refused his orders to exist his vehicle. Like Lamb, Sholtis perceived a threat to his safety and, in response, attempted to prevent Marin from accessing the vehicle's console. The police report indicates that Marin only received minor injuries, and Marin offers no evidence to contradict the description of the physical injuries sustained or the amount of force used. In light of all of the circumstances, the Court finds that Sholtis' response was reasonable and that Sholtis did not use excessive force.

Because Marin does not establish that a genuine issue of material fact exists whether Sholtis

or otherwise acted in a physically threatening manner. See id. According to Pride, he "verbally resisted Lamb's questioning, at one point saying to Lamb, . . . 'I bet you hate men, don't you?' [Pride] alleged that Lamb responded by stating, 'I'll show you how I hate men,' and choking Pride" with her hand for approximately 30 seconds. Id. The Tenth Circuit, after noting that "[t]he only allegation Pride flatly contests is that he was starting out of his chair," held that Lamb's conduct was objective reasonable:

> [T]he relevant question for the court is not whether Pride acted in a threatening manner but whether Officer Lamb reasonably believed so. See Hunter v. Bryant, 502 U.S. 224, ----, 112 S.Ct. 534, 537 . . . . Pride's pleadings, while directly contesting certain factual issues, simply fail to demonstrate that Lamb acted unreasonably in response to the perceived threat to her safety and the safety of others in the room. Officer Lamb encountered an intoxicated and provocative individual who was in custody for disorderly conduct. When that individual acted in a manner which she reasonably perceived as threatening, she used moderate force to restrain him. The record reveals that [the] individual sustained minimal immediate injury and no permanent injury whatsoever as a result of that application of force. Under these circumstances, we hold that Officer Lamb's conduct was objectively reasonable. Because Pride failed to show that Lamb violated his Fourth Amendment rights, his § 1983 claim was properly dismissed on summary judgment.

Id. at 717.

Like in Pride v. Does, Sholtis was interacting with a man he believed to be intoxicated who had refused his orders to exist his vehicle. Like Lamb, Sholtis perceived a threat to his safety and, in response, attempted to prevent Marin from accessing the vehicle's console. The police report indicates that Marin only received minor injuries, and Marin offers no evidence to contradict the description of the physical injuries sustained or the amount of force used. In light of all of the circumstances, the Court finds that Sholtis' response was reasonable and that Sholtis did not use excessive force.

Because Marin does not establish that a genuine issue of material fact exists whether Sholtis

violated his fourth amendment constitutional right, the Court finds that Sholtis is entitled to summary judgment on the excessive force claims.

## II.    THE COURT'S WILL REMAND THE REMAINING STATE TORT CLAIM FOR MALICIOUS ABUSE OF PROCESS TO STATE COURT.

Marin originally filed this action in state court. The Defendants removed the case to federal court under 28 U.S.C. § 1441. The Court, having resolved all federal law issues, declines to exercise its supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. Marin, now proceeding *pro se*, did not appear for the hearing on the motion for summary judgment, nor did he file any response brief to the motion. To give him an additional opportunity to present his case, as well as to provide the state court the option to resolve any remaining state law issues, the Court will remand the state claim to state court.[12] Sholtis did not oppose a remand of the state-law claim to state court. See Transcript of Hearing at 7:9 - 8:18 (December 2, 2004).

**IT IS ORDERED** that the Defendant Sholtis' Motion for Summary Judgment is granted. The Plaintiff's Fourth Amendment Excessive Force Claim against Defendant Sholtis is dismissed with prejudice. Defendant Sholtis' request for attorney's fees is denied. The remaining state-law claim and case is remanded to the Second Judicial District, Bernalillo County, State of New Mexico

---

[12] Sholtis requests attorney's fees and costs, but provides no basis for such an award. Under the American rule, fees and costs are not shifted unless some rule or statute creates an exception. See Sterling Energy, Ltd. v. Friendly Nat. Bank, 744 F.2d 1433, 1435 (10th Cir. 1984)("Under the traditional American rule, the prevailing party ordinarily cannot obtain attorneys fees from a losing party.")(citing Hall v. Cole, 412 U.S. 1, 4-5 (1973)). Sholtis points to no exception, and none appears available. The Court will thus not award him fees. He may, however, as prevailing party, timely seek costs under the Federal Rules of Civil Procedure and local rules.

.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Miguel Marin
Albuquerque, New Mexico

    *Plaintiff pro se*

Kenneth C. Downes
Richard A. Sandoval
Downes & Sandoval, P.C.
Albuquerque, New Mexico

    *Attorneys for the Defendant Tom Sholtis*